IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY ROWLAND, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05 C 1957 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| HAVEN PROPERTIES, LLC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Kimberly Rowland brings a ten count complaint against Haven Properties, LLC, Barrings Mortgage, Inc., Jeff Brandt, Mary Niego-McNamara, Quinn Niego, Joe Niego and Bridgeview Bank and Trust (collectively "defendants") for various federal and state law claims pertaining to the sale of her home. Apparently, only defendant Haven Properties has been served and moves to dismiss the complaint in its entirety pursuant to Rule 12(b)(6). In general, Haven argues each count of the complaint is based on Rowland's contention that the parties' created an equitable mortgage. Haven asserts Rowland fails to allege sufficient facts to establish that the parties intended to create an equitable mortgage, thus all claims must be dismissed.[1]

---

[1] Rowland's response to the motion exceeds 15 pages in violation of L.R. 7.1 and this court's standing order. Rowland did not obtain leave of court to file an enlarged response brief. Nevertheless, due to the number of counts in the complaint and the lengthy factual background, the court will consider Rowland's response.

1

## BACKGROUND

For purposes of the motion, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in Rowland's favor. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). The following facts are taken from the complaint.

After the death of her husband, Rowland fell behind in her mortgage payments. Compl. at ¶¶ 6-7. Foreclosure proceedings were commenced in July 2004. *Id.* at ¶ 7. A judgment of foreclosure was entered and a foreclosure sale was scheduled on February 23, 2005. *Id.* at ¶ 8. After the notice of foreclosure was filed, Rowland began receiving mailings, fliers and calls promising to help save her home. *Id.* at ¶ 9. Rowland grew depressed and withdrawn and was afraid to open her mail because she did not want to receive more correspondence regarding the foreclosure of her home. *Id.* at ¶ 8. On February 8, however, she received a letter signed by Quinn Niego of Barrings Mortgage that did not appear to be an advertisement. *Id.* at ¶ 10. Niego's letter stated that he did not indiscriminately send letters to homeowners in foreclosure, just those he has "heavily screened and pre-qualified!" and that he is able to "quickly refinanc[e] homes out of foreclosure!" *Id.* at ¶ 14. The letter assured Rowland that unlike a "typical mortgage broker," he would not string her along or ignore her phone calls. *Id.* Rowland telephoned Niego the same day she received his letter. *Id.* at ¶ 15.

The next day, Rowland met with Niego at the offices of Niego Realty. Niego told Rowland he would help her refinance her mortgage if it was not too late, and that he would call her the following day. *Id.* at ¶ 16. Niego did not call, nor did he return Rowland's calls. *Id.* On or around February 10, Rowland received a hand-delivered letter signed by Jeff Brandt of Haven Properties stating that he could help stop her foreclosure. Brandt indicated time was of the essence. *Id.* at ¶ 17.

Rowland telephoned Brandt that same day. *Id.* at ¶ 18. She told Brandt that she met with Niego; Brandt indicated he had worked with Niego before. *Id.* On February 11, she met with Brandt at his office. *Id.* at ¶ 19. At the time, she did not realize that his office was upstairs from Niego Realty. *Id.* Brandt told her that Niego would not be able to act in time to refinance her home. *Id.* Rowland became distraught – crying and sobbing – and Brandt asked her why she was afraid. *Id.* Rowland said she was afraid that Brandt was going to take her house from her. *Id.* Brandt assured her that he would help save her home. *Id.*

Over the next several days, Brandt visited Rowland's home, conducted a walk-through inspection and sent over a surveyor and appraiser. *Id.* at ¶ 21. On February 15, at Brandt's request, Rowland went to his office to sign paperwork. *Id.* at ¶ 23. Brandt indicated that he would pay off Rowland's existing mortgage and her car loans. *Id.* Rowland would be required to give Brandt monthly payments of $1300 for one year. *Id.* At the end of the year, Rowland would pay Brandt $99,000, or she could obtain refinancing through Niego. *Id.* Rowland was not given any documentation of the loan or the repayment terms. *Id.* Brandt presented Rowland with a form giving him her power of attorney so that he could request the payoff amounts from her mortgage and car loan lenders and then pay the loans. *Id.* at ¶ 24. Rowland was not given a copy of the power of attorney form. *Id.* Brandt also provided her with several other documents to sign; Rowland does not know what the documents were nor did she receive copies of them. *Id.* at ¶ 25. Rowland was not represented by an attorney at the meeting. *Id.* at ¶ 26. Brandt told her an attorney was unnecessary because the transaction involved a small amount of money and because she was retaining her home. *Id.*

Around February 17, Brandt asked Rowland to come to his office to finalize the transaction. *Id.* at ¶ 27. The next day, Rowland met with Brandt in a room below his office and in the back of Niego Realty's offices. *Id.* at ¶ 28. Brandt presented her with a HUD settlement statement that reflected: (1) a contract sales price/gross amount due to seller price of $91,500.00; (2) that $78,593.61 would be paid to her mortgage company; and (3) that $6,751.43 would be paid to her car loan company. *Id.* at ¶¶ 28-29. Niego-McNamara was listed as the individual who received "Buyer's Attorney's Fees" and "Seller's Attorney Fees." *Id.* at ¶ 31. Rowland asked whether she would receive any money in cash, since this was a refinance loan. Rowland wanted to repay her mother for a loan. *Id.* at ¶ 28. Brandt adjusted the settlement statement amounts, presented Rowland with a $3000 check and told her she would be required to pay him an extra $50 per month. *Id.* Rowland signed the settlement statement in reliance on Brandt's representation that the transaction would provide her with a home equity loan. *Id.* at ¶ 30. At no time did Rowland intend to sell her home. *Id.* Rather she understood she was receiving a loan on her home from Brandt. *Id.*

After Brandt left, an unknown man came into the room and presented Rowland with additional documents to sign. *Id.* at ¶ 35. Rowland did not understand why more documents were necessary and they were not explained to her. *Id.* Rowland signed a Chicago apartment lease with a one year lease term and a monthly rent of $1350. *Id.* The man also had Rowland sign a rider to the lease. *Id.* Several days later, Rowland called the telephone number for Haven, the "Owner or Management Agent" listed on the lease, but the number was disconnected. *Id.* at ¶ 37.

Rowland was under a great deal of stress when she met with Brandt on February 18 because her home was scheduled to be sold at a foreclosure auction five days later. *Id.* at ¶ 38. Rowland asserts Niego and Brandt conspired to exacerbate her distress at the prospect of losing her home to

take advantage of her and fraudulently obtain ownership of her home. *Id.* at ¶¶ 39-40. Defendants Haven Properties, LLC, Barrings Mortgage, Inc., Terry Niego and Quinn Niego – the companies' registered agents – have the same record address. *Id.* at ¶ 40. Mary Niego-McNamara signed the settlement statement on Haven's behalf. *Id.* Joe Niego is Barrings' president and secretary. *Id.* Rowland contends she receives $2424 per month in social security payments, that she was unable to satisfy her previous $785 mortgage payments on her income and therefore could not afford mortgage payments of $1350 per month. *Id.* at ¶ 36. She asserts she never intended to deed away her home, which was valued at $245,000, for a $91,500 loan. *Id.* at ¶ 41.

## DISCUSSION

Rowland advances the following claims: (1) declaratory judgment that the purported sale was an equitable mortgage (Count I); (2) preliminary and permanent injunctive relief to stay prosecution of any forcible action (Count II); (3) constructive trust (Count III); (4) intentional infliction of emotional distress (Count IV); (5) rescission of contract due to duress, fraud or unconscionability (Count V); (6) Truth in Lending Act ("TILA") and Home Ownership and Equity Protection Act ("HOEPA") (Count VI); (7) Illinois Consumer Fraud and Deceptive Business Act (Count VII); (8) Illinois High Risk Home Loan Act (Count VIII); (9) common law fraud (Count IX); and (10) Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count X). Haven moves to dismiss all counts.

First, Haven argues Rowland should not be permitted to claim that the transaction was an equitable mortgage rather than a sale and lease because she knowingly signed numerous documents without understanding or investigating their terms. Haven contends a party who signs a contract without learning its contents remains bound by the contract. The case Haven relies on for this

proposition is distinguishable. In *Paper Express, Ltd. v. Pfankuch Maschinen Gmbh*, 972 F.2d 753, 757 (7th Cir. 1992) the parties were sophisticated businesses engaged in international commerce. *Id.* at 758. Here, it cannot be said that the parties had equal bargaining power. Rowland was unrepresented by counsel, was allegedly distraught, and engaged in the transaction after Brandt approached her shortly before the foreclosure sale. Haven ignores Rowland's assertion that Brandt told her an attorney and an investigation were unnecessary because the transaction involved a small amount of money and because she was to retain her home. In any event, Rowland is not claiming she failed to read the documents. Rather, she contends she was the victim of fraud. Fraud is a defense available to a party who claims she should not be bound by a contract's terms. *See e.g., Dugan v. R.J. Corman R.R. Co.*, 344 F.3d 662, 667 (7th Cir. 2003).

Haven argues the complaint attachments, as well as documents not attached to the complaint,[2] clearly reflect that the transaction constituted a sale and lease. Because the documents identify Rowland as lessee and seller, Haven contends it is clear that the parties did not intend to create a mortgage. Yet Haven ignores Rowland's assertions that she intended to enter into a refinancing loan. In addition, she alleges that Brandt and Niego offered her refinancing, that she was specifically told that they would save her home, not take it from her, and that she requested cash from the refinancing transaction. Despite the documents' terminology, Rowland alleges she was misled into entering a transaction materially different from that offered to her. Drawing all

---

[2]Haven attaches documents from the transaction to the motion to dismiss. Documents attached to a Rule 12(b)(6) motion may not be considered unless they are referred to in the complaint and are central to the claims. *Albany Bank & Trust Co. v. Exxon Mobile Corp.*, 310 F.3d 969, 971 (7th Cir. 2002); *Gavin v. AT&T Corp.*, No. 01 C 2721, 2004 U.S. Dist. LEXIS 19846, *3 (N.D. Ill. Sept. 29, 2004). Haven's documents are not directly referenced in the complaint, nor are they necessarily central to Rowland's claims. In any event, the motion fails even if the court considered Haven's documents.

reasonable inferences in Rowland's favor, the terms of the documents do not necessarily reflect the parties' intended transaction.

This is particularly true given the nature of an equitable mortgage claim. A deed may be considered an equitable mortgage depending on the parties' intent. Under Illinois law,

> [A] deed absolute on its face may be considered an equitable mortgage under certain circumstances. The relevant statute provides: "Every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered a mortgage." Ill. Rev. Stat. 1989, ch. 95, par. 55. Whether a deed is to be considered as an equitable mortgage depends on the parties' intentions. To convert an absolute deed into a mortgage, the proof must be clear, satisfactory and convincing and may come from almost every conceivable fact that could legitimately aid that determination.

*Robinson*, 223 Ill. App. 3d at 1014, 586 N.E.2d at 320 (citations omitted). "[S]tatements of the parties at and after execution of the instrument, as well as preliminary negotiations leading up to the transaction, have been held admissible to illustrate the purpose and intent of the parties." *Havana Nat'l Bank v. Wiemer*, 32 Ill. App. 3d 578, 584, 335 N.E. 2d 506, 510 (3d Dist. 1975). Haven contends Rowland's claim must fail because she has not established an indebtedness or liability between the parties, arising before or at the time of conveyance. While Illinois courts look to the existence of an indebtedness in the analysis, indebtedness is one of many factors that may be considered in evaluating the existence of an equitable mortgage. *See e.g.*, *Robinson v. Builders Supply & Lumber Co.*, 223 Ill. App. 3d 1007, 1014, 586 N.E.2d 316, 320 (1st Dist. 1991). Accordingly, Rowland may establish the parties' intent by various means. Her equitable mortgage claim is not precluded by the documents themselves.

Because the parties' intent is the critical issue, and Rowland may prove her claims by using "every conceivable fact that could legitimately aid that determination," Rule 12(b)(6) dismissal is

inappropriate. When ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999), *citing Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957). A Rule 12(b)(6) motion should not be granted "unless it appears beyond a doubt that plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Gibson*, at 45-46. Whether or not Rowland will ultimately be able to establish the existence of an equitable mortgage, her pleading is sufficient to survive the motion to dismiss.

Accordingly, Haven's motion to dismiss Counts I-III, VI-X on the basis that Rowland has not established a loan or mortgage must be denied. The motion to dismiss Count IV, intentional infliction of emotional distress, must also be denied. Contrary to Haven's assertions, Rowland does not need to "prove" facts that establish Haven's conduct was extreme and outrageous at the pleading stage. To state a claim of intentional infliction of emotional distress, Rowland need only allege that: (1) Haven's conduct was extreme and outrageous; (2) Haven intended to inflict severe emotional distress or knew there was at least a high probability that its conduct would inflict severe emotional distress; and (3) Haven's conduct caused severe emotional distress. *See e.g., Maddie v. Siebel Sys.*, No. 04 C 3419, 2004 U.S. Dist. LEXIS 22511, *16-17 (N.D. Ill. Nov. 4, 2004). Rowland has sufficiently alleged each of these elements. *See* Compl. at ¶¶ 51-54.

Haven moves to dismiss Count V, rescission of contract due to duress, fraud or unconscionability. Citing *Paper Express*, Haven argues Rowland cannot sign numerous documents and then complain she was duped into signing them. For the reasons stated above, this argument is rejected. Haven also states Rowland cannot sustain her claim for rescission in Count V or common law fraud in Count IX in light of Rule 9(b)'s heightened pleading requirements. A fraud claim is

alleged with particularity when the complaint identifies the "who, what, when, where and how..." *See Davis v. SPSS, Inc.*, No. 04 C 3427, 2005 U.S. Dist. LEXIS 9497, *11 (N.D. Ill. May 10, 2005). Rowland claims defendants misrepresented the character of the loan by portraying it as a mortgage loan. Compl. at ¶ 71. She identifies the people/entities who made purported misrepresentations, the time, place and content of the misrepresentations, and the methods in which misrepresentations were communicated. *See VIP Sports Marketing, Inc. v. Buzil*, No. 04 C 3508, 2004 U.S. Dist. LEXIS 23424, *6 (N.D. Ill. Nov. 15, 2004). The motion to dismiss Counts V and IX must be denied.

Finally, Haven moves to dismiss Count X's racketeering claim. Haven contends Rowland has not sufficiently alleged a pattern of racketeering or that Haven engaged in an activity that may be construed as either criminal or racketeering. Count X of the complaint is conclusory. However, on April 8, 2005, the court ordered Rowland to file a RICO case statement, specifically detailing her RICO allegations. Rowland's 29-page case statement was filed on April 25, 2005, approximately two weeks before Haven filed its motion to dismiss. In her case statement, Rowland identifies the purported predicate acts that form a pattern of racketeering activity: two predicate offenses of both mail fraud and bank fraud within the past year, and numerous commissions of mail fraud and bank fraud within the past 10 years. Case Statement at 20-21. Whether activity constitutes a pattern requires consideration of four factors: "(1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and, (4) the occurrence of distinct injuries." *U.S. Textiles, Inc. v. Anheuser-Busch Companies*, 911 F.2d 1261, 1266 (7th Cir. 1990). In part, Rowland contends defendants systematically defraud numerous homeowners of the equity in their homes by "utilizing the U.S. Postal Service in order to solicit homeowners by means of false and fraudulent pretenses,

representations and promises; and . . . by obtaining the homeowners' property while mortgage companies have a partial property interest in the property by means of false and fraudulent pretenses, representations and promises." *Id.* Drawing all reasonable inferences in Rowland's favor, she has sufficiently alleged a pattern of racketeering activity.

The court notes that Rowland's case statement provides defendants with sufficient notice of her RICO claims, even though Count X does not. Dismissing Count X with leave to amend and include allegations from the case statement would cause unnecessary delay and waste time. However, the RICO claims are limited to the allegations described in the case statement.

## CONCLUSION

For the foregoing reasons, Haven's motion to dismiss is denied.

June 24, 2005                                    ENTER:

                                                                         Suzanne B. Conlon
                                                                         United States District Judge