IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY ROWLAND, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 05 C 1957 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| HAVEN PROPERTIES, LLC, BARRINGS | ) | |
| MORTGAGE, INC., JEFF BRANDT, MARY | ) | |
| NIEGO-MCNAMARA, QUINN NIEGO, JOE | ) | |
| NIEGO, and BRIDGEVIEW BANK AND | ) | |
| TRUST, TRUST #1-3050, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Kimberly Rowland brings a ten-count complaint against Haven Properties, LLC, Barrings

Mortgage, Inc., Jeff Brandt, Mary Niego-McNamara, Quinn Niego, Joe Niego, and Bridgeview Bank

and Trust, Trust #1-3050 (collectively "defendants"), alleging various violations of federal and state

laws pertaining to the sale of her home. In a joint motion, Bridgeview Bank moves to dismiss

Counts IV through IX of the complaint, and Joe Niego moves to dismiss Counts I through IX. For

the reasons set forth below, the motion is granted in part.

## BACKGROUND

The complaint tells a sad story of a widow who was allegedly tricked into selling her home

to predatory mortgage brokers. Of course, the allegations are yet to be proven. But for purposes of

this motion, the court accepts all well-pleaded allegations as true and draws all reasonable inferences

in Rowland's favor. *See Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005) (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)).

After the death of her husband, Rowland fell behind in mortgage payments for her home located at 6430 South Knox Avenue, Chicago, Illinois. Compl. ¶¶ 1, 6-7. In July 2004, she faced foreclosure proceedings. Compl. ¶ 7. On February 23, 2005, a judgment of foreclosure was entered and a foreclosure sale was scheduled. Compl. ¶ 8. Meanwhile, Rowland began receiving solicitations promising to help save her home. Compl. ¶ 9.

On February 8, she received a letter signed by Quinn Niego of Barrings Mortgage. Compl. ¶ 10. Joe Niego was the president and secretary of Barrings Mortgage. Compl. ¶ 13. In the letter, Quinn Niego stated that he could "quickly refinanc[e] homes out of foreclosure." Compl. ¶ 14. Quinn Niego assured Rowland that unlike a "typical mortgage broker," he would not string her along or ignore her phone calls. *Id.* The next day, Rowland met with Quinn Niego at the offices of Niego Realty. Compl. ¶ 16. At the meeting, Quinn Niego told Rowland he would help her refinance her mortgage if it was not too late, and that he would call her the following day. *Id.* But Quinn Niego did not call, nor did he return Rowland's calls. *Id.* On February 10, Rowland received a hand-delivered letter signed by Jeff Brandt of Haven Properties stating that he could help stop her foreclosure. Compl. ¶ 17. Rowland telephoned Brandt that same day. Compl. ¶ 18. On February 11, she met with Brandt at his office. Compl. ¶ 19. At the time, she did not realize that his office was upstairs from Niego Realty, although Brandt told her he had worked with Quinn Niego before. Compl. ¶¶ 18-19. Brandt told her that Quinn Niego would not be able to act in time to refinance her home. Compl. ¶ 19. Rowland started crying. *Id.* Brandt assured her that he would help save her home. *Id.*

Over the next several days, Brandt visited Rowland's home, conducted a walk-through inspection, and sent over a surveyor and an appraiser. Compl. ¶ 21. On February 15, at Brandt's request, Rowland went to his office to sign paperwork. Compl. ¶ 23. Brandt indicated that he would pay off Rowland's existing mortgage and her car loans. *Id.* Rowland would be required to give Brandt monthly payments of $1,300 for one year. *Id.* At the end of the year, Rowland would pay Brandt $99,000, or she could obtain refinancing through Quinn Niego. *Id.* Rowland was not given any loan documents nor was she informed of the repayment terms. *Id.* Brandt presented Rowland with a form giving him her power of attorney so that he could request the payoff amounts from her mortgage and car loan lenders. Compl. ¶ 24. Rowland was not given a copy of the executed form. *Id.* Brandt also asked her to sign other documents; Rowland did not know what the documents were, nor did she receive copies of them. Compl. ¶ 25. Rowland was not represented by counsel. Compl. ¶ 26. Brandt told her an attorney was unnecessary because the transaction involved a small amount of money and because she was retaining her home. *Id.*

Upon Brandt's request, Rowland met with him in a room below his office and in the back of Niego Realty's offices on February 17. Compl. ¶ 28. Brandt presented her with a U.S. Department of Housing and Urban Development settlement statement, which reflected: (1) a contract sales price/gross price of $91,500.00 due to seller; (2) that $78,593.61 would be paid to her mortgage company; and (3) that $6,751.43 would be paid to her car loan company. Compl. ¶¶ 28-29. "Bridgeview Bank and Trust, Trust #1-3050" was named as "borrower" in the statement. Compl. ¶ 34. Niego-McNamara was listed as the individual who received "Buyer's Attorney Fees." Compl. ¶ 31. Rowland asked whether she would receive any money in cash, since this was a refinanced loan. Compl. ¶ 28. Brandt adjusted the settlement statement amounts, presented

3

Rowland with a $3,000 check, and told her she would be required to pay him an extra $50 per month. Compl. ¶ 28. Rowland signed the settlement statement in reliance on Brandt's representation that the transaction would provide her with a home equity loan. Compl. ¶ 30.

After Brandt left, an unknown man came into the room and presented Rowland with additional documents to sign. Compl. ¶ 35. She did not understand why more documents were necessary. *Id.* She signed a Chicago apartment lease with a one year term and a $1,350 monthly rent. *Id.* The man also had her sign a rider to the lease. *Id.*

At no time did Rowland intend to sell her home. Compl. ¶ 30. Rather, she understood she was receiving a loan on her home from Brandt. *Id.* But after signing all the documents, she effectively sold her home, which was valued at $245,000, for a $91,500 loan. Compl. ¶ 41. As a result, she became a tenant of 6430 South Knox Avenue, owned by Haven Properties.

Rowland filed this lawsuit seeking to void the home sale and to recover damages. She claims she was under a great deal of stress from the prospect of foreclosure. Compl. ¶ 38. She alleges defendants conspired to exacerbate her distress to take advantage of her and to fraudulently obtain ownership of her home. Compl. ¶¶ 39-40. Rowland advances the following ten claims:

- declaratory judgment that the purported sale was an equitable mortgage (Count I);
- preliminary and permanent injunctive relief to stay prosecution of any foreclosure action (Count II);
- constructive trust (Count III);
- intentional infliction of emotional distress (Count IV);
- rescission of contract due to duress, fraud, or unconscionability (Count V);
- Truth in Lending Act and Home Ownership and Equity Protection Act (Count VI);
- Illinois Consumer Fraud and Deceptive Business Act (Count VII);
- Illinois High Risk Home Loan Act (Count VIII);
- common law fraud (Count IX); and
- Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count X).

4

## DISCUSSION

### I. Motion to Dismiss Standard

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, and dismissal of an action under the rule is warranted only if 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Cler*, 423 F.3d at 729 (quoting *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)). To survive a motion to dismiss, a complaint "need not plead particular legal theories or particular facts in order to state a claim." *DeWalt*, 224 F.3d at 612. "All that is required is 'a short and plain statement . . . that will give the defendant fair notice'" of the nature and basis of the claim. *Id.* (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)).

Rowland argues this motion is procedurally improper because the court has denied Haven Properties' motion to dismiss. But Bridgeview Bank and Joe Niego are entitled to move to dismiss in their own right. *See* Fed. R. Civ. P. 12. Therefore, Rowland's argument is incorrect. The court now turns to the merits of this motion.

### II. Claims Against Bridgeview Bank

Moving to dismiss Counts IV through IX, Bridgeview Bank advances three arguments: (1) as trustee of 6430 South Knox Avenue, Bridgeview Bank is not a proper party to this lawsuit; (2) Rowland fails to allege any wrongdoing on its part; and (3) she fails to plead fraud with sufficient particularity under Federal Rule of Civil Procedure 9(b). The court analyzes these arguments in turn.

As an exhibit to its moving brief, Bridgeview Bank attaches the agreement creating trust number 1-3050. Def. Ex. 1. This agreement constitutes part of Bridgeview Bank's pleading. Fed.

R. Civ. P. 10(c). "As a general rule, on a Rule 12(b)(6) motion, the court may consider only the plaintiff's complaint." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). As an exception to the general rule, however, the court may consider documents attached to a motion to dismiss if they are central to plaintiff's claims. *Id.* (this exception applies even where the complaint does not specifically refer to the documents attached). Bridgeview Bank's trust agreement is crucial for understanding the relationships among defendants and to evaluate the validity of Rowland's claims against them. Rowland's citation of the agreement in her opposition brief highlights the agreement's importance. *See* Pl. Mem. 4. Therefore, the court considers this agreement in ruling on Bridgeview Bank's motion. *See Rosenblum*, 299 F.3d at 661 (the court may properly consider an exhibit without converting a motion to dismiss to a motion for summary judgment).

The agreement provides Bridgeview Bank and Trust, as trustee, holds legal and equitable title to the properties held in trust number 1-3050. Def. Ex. 1. The sole beneficiary is Haven Properties, and the power of direction to convey and manage the properties is vested in Terry Niego or Quinn Niego. *Id.* The interest of the beneficiary is personal property. *Id.* These provisions are typical in an Illinois land trust. *See* 735 ILL. COMP. STAT. 5/15-1205 (2005) (codifying the same land trust arrangement).

In an action involving an Illinois land trust, the question of whether the beneficiary or the trustee is the proper party depends on "the nature of the action in light of the rights and duties established by the trust agreement." *See Just Pants v. Bank of Ravenswood*, 483 N.E.2d 331, 335 (Ill. App. Ct. 1st Dist. 1985) (refusing to rule on whether the trustee was the proper party because

the record on appeal did not contain the trust agreement). Based on the trust agreement, Bridgeview

Bank argues it is not a proper party to this case.

It is true, as the trust agreement shows, a beneficiary of an Illinois land trust may act as a true

owner of the trust property. The beneficiary's broad power is recognized by the Illinois Supreme

Court:

> The trustee derives all of his power from the beneficiary and acts solely on the beneficiary's behalf. The beneficiary may withdraw or modify the trustee's authority at any time. Indeed, there is not a single attribute of ownership, except title, which does not rest in the beneficiary. The rights of creation, modification, management, income and termination all belong to the beneficiary. In reality the transfer to the trustee is a formality involving a shifting of legal documents. The land trust is, in fact, a fiction which has become entrenched in the law of this State and accepted as a useful instrument in the handling of real estate transactions. Outside of relationships [b]ased on legal title, the trustees' title has little significance.

*People v. Chicago Title & Trust Co.*, 389 N.E.2d 540, 545 (Ill. 1979) (internal citations omitted).

But this broad power does not render a beneficiary a proper party to every lawsuit involving a land

trust. A trustee can be the proper party to a lawsuit if the trustee is a party to the underlying

transaction.

The decision by the Illinois Court of Appeals in *Jakovljevich v. Alvarez* is instructive. 252

N.E.2d 60 (Ill. App. 1st Dist. 1969). In *Alvarez*, the beneficiaries of a land trust sued a tenant of the

trust property for back rent based on a lease. *Id.* at 61. The relevant trust provisions concerning the

rights and duties of the trustee bank were identical to the provisions in the Bridgeview Bank trust.

*See id.* at 62 n.1. The trustee bank in *Alvarez* was the lessor in the underlying lease, although one

of the two beneficiaries executed the lease on the trustee bank's behalf. *Id.* at 61. The tenant moved

to dismiss, claiming that only the trustee bank, not the beneficiaries, had the right to sue. *Id.* The

7

trial court dismissed the beneficiaries' claims. *Id.* at 61. The *Alvarez* court's affirmance turned on the fact that the trustee bank was the lessor in the underlying lease. *Id.* at 63.

The reasoning in *Alvarez* is applicable to this case. Rowland alleges "Bridgeview Bank and Trust, Trust #1-3050" was a party to the underlying sales contract. Compl. ¶ 34; Compl. Ex. E. She further claims Niego-McNamara executed the contract on behalf of Haven Properties, the trust beneficiary. Compl. ¶ 31. Thus, similar to *Alvarez*, Bridgeview Bank, as a party to the underlying contract, is a proper party to this lawsuit. *See Alvarez*, 252 N.E.2d at 63; *see also Am. Nat'l Bank & Trust Co. of Chicago v. Harcros Chems., Inc.*, No. 95C3750, 1997 WL 281295, at **17-18 (N.D. Ill. May 20, 1997) (following *Alvarez* in analyzing succession rights to sue).

Arguing the contrary, Bridgeview Bank cites *BA Mortgage & International Realty Corp. v. American National Bank & Trust Co. of Chicago*, 706 F. Supp. 1364 (N.D. Ill. 1989). But *BA Mortgage* is distinguishable. There, plaintiff mortgagee sought foreclosure of a trust property. *Id.* at 1366. The beneficiaries of the trust property counterclaimed, alleging that the mortgagee breached its fiduciary duty to them when negotiating a lease on the trust property. *Id.* at 1370. The court held that the beneficiaries were proper parties to assert their counterclaims because they directly dealt with the mortgagee and because the counterclaims concerned management of the trust property. *Id.* Unlike *BA Mortgage*, the title, rather than the management, of 6430 South Knox Avenue, is in dispute here. Furthermore, as discussed above, Bridgeview Bank was a party to the underlying sales contract. Therefore, Bridgeview Bank's reliance on *BA Mortgage* is misplaced; its argument must fail. *See Tizes v. Curcio*, No. 94C7657, 1995 WL 476675, at **9-10 (N.D. Ill. Aug. 9, 1995) (beneficiaries are the proper parties to a lawsuit involving the use, rather than the title, of a trust

property). Accordingly, the court denies Bridgeview Bank's motion to dismiss Counts IV through IX on the basis that it is not a proper party.

Bridgeview Bank further argues Rowland failed to allege any set of facts to support its liability in Counts IV through IX. Defs. Mem. 6. Specifically, the bank asserts that she failed to plead "any extreme or outrageous act" for her claim for intentional infliction of emotional distress. Defs. Mem. 7. In support of its arguments, Bridge Bank cites *Sanglap v. LaSalle Bank, FSB*, 345 F.3d 515 (7th Cir. 2003). But *Sanglap* dealt with a judgment as a matter of law under Federal Rule of Civil Procedure 50; thus, it sheds no light on the Rule 12(b)(6) motion at hand.

To state a claim for intentional infliction of emotional distress under Illinois law, a plaintiff must allege that: (1) defendant's conduct was extreme and outrageous; (2) defendant either intended that the conduct inflict severe emotional distress, or knew that there was a high probability that the conduct would cause severe emotional distress; and (3) defendant's conduct in fact caused severe emotional distress. *Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994). Rowland sufficiently states all three elements against all defendants. *See* Compl. ¶¶ 51-54. Contrary to Bridgeview Bank's argument, federal notice pleading rules do not require a complaint to be factually specific. *See, e.g., Leatherman*, 507 U.S. at 168 ("heightened pleading standards" are contrary to the system of notice pleading). Rowland is not required to set forth every action that allegedly inflicted emotional distress. *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998). So long as she gives Bridgeview Bank fair notice of the nature and basis of her claim in a short statement, her complaint survives a motion to dismiss. *See DeWalt*, 224 F.3d at 612. Thus, Bridgeview's arguments are without merit.

Bridgeview Bank's arguments under Rule 9(b), however, are persuasive. Rule 9(b) requires that complaints "[i]n all averments of fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Under this rule, fraud claims must state with particularity the factual basis for the alleged fraud, including: (1) the identity of the person(s) who made the misrepresentation; (2) the time, place, and content of the misrepresentation; and (3) the method by which the misrepresentation was communicated to plaintiffs. *Gen. Elec. Capital Corp.*, 128 F.2d at 1078. In other words, this rule requires the "who, what, when, where, and how" of the circumstances of the fraud or mistake. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). These requirements aim to ensure "that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). The complaint is devoid of any alleged misrepresentations by Bridgeview Bank. In response, Rowland attempts to cure this defect by pointing to allegations on page eight of her RICO statement. Pl. Mem. 4. Even if the court could properly incorporate the RICO statement into the fraud claims, the RICO statement only generally alleges defendants "utilized" the trust to commit fraud. The RICO statement is therefore insufficient to satisfy particularity requirements. *See Ackerman*, 172 F.3d at 471 (affirming dismissal of common law fraud claims under Rule 9(b) that alleged only in general terms that corporate officers "inspired, encouraged, and condoned" misrepresentations by the corporation's sales agents). Accordingly, Rowland's fraud claims – Counts V, VII, and IX – against Bridgeview Bank are dismissed.

## III. Claims Against Joe Niego

Joe Niego asserts two arguments in support of his motion to dismiss Counts I through IX: (1) Rowland does not allege he was involved in any wrongdoing and as an officer of Barrings Mortgage, he is not liable for its wrongdoings absent his own involvement; and (2) Rowland's allegations fail to satisfy Rule 9(b) heightened pleading requirements.

Joe Niego's first argument is unpersuasive. Citing *Itofca, Inc. v. Hellhake*, 8 F.3d 1202 (7th Cir. 1993), he argues that as president and secretary of Barrings Mortgage, he cannot be held liable for the alleged wrongdoings of Barrings Mortgage and its agents. The court is mindful of the general rule of law in Illinois "that a corporation as an entity is separate from its officers 'who are not . . . liable for the corporation's obligations.'" *Id.* at 1204 (quoting *Gallagher v. Reconco Builders, Inc.*, 415 N.E.2d 560, 563 (Ill. App. 1st Dist. 1980)). Under this rule, corporate officers are liable for torts only if they "participated in the conduct giving rise to that liability.'" *Id.* (quoting *Prince v. Zazove*, 959 F.2d 1395, 1401 (7th Cir. 1992)). While this rule may provide Joe Niego with a defense to Rowland's claims, it does not insulate him from this lawsuit. Thus, this rule does not require dismissal of claims against him.

Rowland alleges that Joe Niego was the president and secretary of Barrings Mortgage. Compl. ¶ 13. Quinn Niego, the alleged architect of the scheme, is an agent of Barrings Mortgage, Compl. ¶ 12, and his initial letter to Rowland bears the address of Barrings Mortgage, Compl. Ex. C. She further alleges all defendants colluded to carry out the alleged scheme. *See, e.g.*, Compl. ¶¶ 49, 52, 55. These allegations provide Joe Niego with sufficient notice of her claims, satisfying the notice pleading standard under Rule 8. *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005) ("This 'short and plain statement' [under Rule 8] requires a plaintiff to allege no more than 'the bare

minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.'" (quoting *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002)). Therefore, dismissal of claims against Joe Niego is inappropriate.

The two cases cited by Joe Niego are readily distinguishable. *Itofca, Inc.* is inapplicable because it dealt with a motion for summary judgment. *Itofca, Inc.*, 8 F.3d at 1203. In *Fure v. Sherman Hospital*, the Illinois Court of Appeals affirmed dismissal of a malpractice suit against a shareholder of a medical corporation. 371 N.E.2d 143, 143 (Ill. App. 1st Dist. 1997). In that case, plaintiff sued not only the treating physician, but also a shareholder of the physician's medical corporation. *Id.* But plaintiff failed to allege that the shareholder rendered any medical services or supervised any physician related to the underlying treatment. *Id.* Accordingly, the court affirmed dismissal of the claims against the shareholder. *Id.* Unlike the plaintiff in *Fure*, Rowland alleges that Joe Niego colluded with other defendants and that his agent, Quinn Niego, orchestrated the underlying scheme. Therefore, Joe Niego's reliance on *Fure* is misplaced.

Joe Niego further argues that Rowland fails to plead her fraud claims against him with the requisite particularity under Rule 9(b). For the same reasons stated above concerning the fraud claims against Bridgeview Bank, the fraud counts are factually insufficient. Accordingly, Counts V, VII, and IX against Joe Niego are dismissed.

## CONCLUSION

For the reasons set forth above, the joint motion by Bridgeview Bank and Joe Niego is granted in part. Counts V, VII, and IX against Bridgeview Bank and Joe Niego are dismissed.

ENTER:

Suzanne B. Conlon
United States District Judge

November 7, 2005